

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1081-09

**JAMES LYNN CAMPBELL, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SEVENTH COURT OF APPEALS
## POTTER COUNTY

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. MEYERS, J., did not participate.

### O P I N I O N

A jury convicted appellant of possession of a controlled substance, cocaine, in an amount of four grams or more, but less than two hundred grams. The jury found two enhancement paragraphs to be true and assessed punishment at ninety-nine years' incarceration in the institutional division of the Texas Department of Criminal Justice. The court of appeals held that appellant's notice of appeal was untimely filed and dismissed his appeal for want of jurisdiction. *Campbell v. State*, No. 07-09-0074-CR, 2009 Tex. App. LEXIS 2565 (Tex. App.–Amarillo, delivered April 15, 2009) (not designated for publication). We conclude that the mailbox rule applies to incarcerated appellants

and grant relief.

We granted appellant's sole ground for review, which he filed *pro se*: "The court of appeals erred in holding that the mailbox rule filing and received by clerk after deposited within ten days applied to indigent criminal defendants acting *pro se*." An amended brief has been filed by "Counsel for Appellant." In that brief, appellant asserts that the court of appeals "erred in holding that the ten-day late-filing requirement, incorporated into TEX. R. CIV. P. 5 and TEX. R. APP. P. 9.2, applies to an indigent, incarcerated litigant acting *pro se*." He asks, "Should *pro se*, incarcerated litigants be exempted from enforcement of the ten-day filing proviso embedded within TEX. R. CIV. P. 5 and TEX. R. APP. P. 9.2(b)(1)?"

The court of appeals noted that it had informed appellant by letter that his notice of appeal appeared to be untimely and that he had ten days to provide information necessary to determine its jurisdiction. *Campbell*, *supra*. Appellant responded by informing the court of appeals that the mailbox rule would be sufficient to establish that jurisdiction. *Id*. However, the court of appeals concluded that the mailbox rule was unavailing to appellant because he and the record failed to provide anything indicating that his new trial motion was timely received as required. *Id*. The court of appeals accordingly dismissed appellant's appeal for want of jurisdiction. *Id*.

"In a criminal case, appeal is perfected by timely filing a sufficient notice of appeal." TEX. R. APP. P. 25.2(b). A criminal defendant who seeks to appeal must file a notice of appeal within thirty days after either the day on which sentence is imposed or suspended in open court or the day on which the trial court enters an appealable order, or within ninety days if the defendant timely files a motion for new trial. TEX. R. APP. P. 26.2(a). A motion for new trial is timely if it is filed "before, but no later than 30 days after, the date when the trial court imposes or suspends sentence in open

court." TEX. R. APP. P. 21.4(a).

Appellant's sentence was imposed on November 18, 2008. Therefore, to have timely filed notice of appeal, appellant had to have filed the notice within thirty days after that date, or within ninety days after that date if he had timely filed a motion for new trial. Appellant's *pro se* motion for new trial was file-stamped on December 31, 2008. In the certificate of service of that motion for new trial, appellant declares, "under penalty of perjury," that the motion was placed in the prison mailbox on December 18, 2008. December 18 was within thirty days of the November 18 day on which the trial court imposed sentence. However, December 31 was more than thirty days after the day on which sentence was imposed and more than 10 days after the date of mailing.

On February 20, 2009, a notice of appeal of this case was filed by an attorney representing appellant, and appellant, *pro se,* filed a notice of appeal on March 3, 2009. We observe that, in the certificate of service of the *pro se* notice, appellant certifies that it "was served within ninety days by mail postage prepaid" to the clerk of the specified Potter County district court on February 12, 2009. That certificate also states, "Mail box rule deemed filed at time delivered to prison authorities."

The state details the pertinent chronology of events as follows:

November 18, 2008: sentence imposed.

December 18, 2008: appellant deposited his *pro se* motion for new trial in the outgoing prison mail receptacle, as represented in the motion's certificate of mailing.

December 31, 2008: the motion for new trial was filed with the district clerk.

February 12, 2009: appellant, as he represented in his certificate of service, mailed his *pro se* notice of appeal to the district clerk.

March 3, 2009: appellant's *pro se* notice of appeal was filed by the district clerk.

(State's brief on the merits, p. 4.)

The state also succinctly delineates the reasoning of the opinion of the court of appeals. It notes that in "[c]ollating the procedural rule deadline for filing a new trial motion with the mailbox rule, appellant's motion for new trial was required to be filed by December 29, 2008, [... and b]ecause the district clerk did not actually receive the motion until December 31, it was untimely, . . . and derivatively the notice of appeal received March 3, 2009[,] was untimely." (State's brief on the merits, pp. 4-5.) It also notes that the court of appeals dismissed the appeal for want of jurisdiction.

Appellant asserts that *pro se* prisoners occupy a distinct niche in the appellate universe when it comes to the crucial act of timely filing a document. He notes that such a litigant cannot select by which method he chooses to accomplish filing. (Appellant's amended brief, p. 4.) He argues that the *pro se* litigant "is condemned to place his trust in prison authorities" to deliver pleadings to the proper filing agency and secure the necessary stamp of receipt. *Id*. After discussing Texas and United States Supreme Court authority addressing *pro se* prisoner appellate filings in state and federal cases, appellant suggests that this Court implement a "delivery to prison authorities" as the moment of "filing" as a bright-line rule for determination of "timely filing." He suggests that such a bright-line rule, triggered by an inmate's delivery to prison authorities, "is not susceptible to questions about delay or lack of diligence which so often arise when the actions of the postal service are called into play or inquiry is made about whether a file-stamped document was actually delivered earlier but not promptly filed." *Id*. at 11.

Appellant argues that if such delivery to prison authorities is treated as "filing" in this case, his handwritten notation indicating actual delivery of the new trial motion to the prison mailbox on

December 18, 2008, satisfied the deadline for filing such motion, thus extending the deadline for filing the actual notice of appeal to February 16, 2009. Appellant points out that his notice of appeal contains his handwritten notation that it was deposited into the custody of prison authorities on February 12, 2009, which was well within the filing deadline. Appellant asserts that his notice of appeal was timely filed and that the court of appeals erred in finding that it was not. Appellant seeks a holding that the date of delivery to prison authorities is determinative of the date of filing for *pro se* incarcerated inmates as a bright-line rule for determination of timely filing.

The state asserts that "[f]or jurisdictional purposes in perfecting appeal, the ten-day requirement in the 'mailbox rule' should be uniformly applied, with no exception for *pro se* inmates." (State's brief on the merits, p. 3.) It argues that "[a]ppellant has an adequate remedy through habeas corpus to gain an out-of-time appeal." *Id*. Nevertheless, the state "does not dispute that an inmate has 'mailed' a document when he delivers it to the appropriate prison official for mailing by the day the document is due." *Id*. at 6. The state candidly acknowledges that "no reason is found to dispute the veracity of appellant's certification [that] he placed his new trial motion in the prison mail box on December 18, 2008," yet questions "whether that action was sufficient to satisfy the 'mailing' component of the mailbox rule." *Id*. at 8. It urges this Court to "decline appellant's invitation to engraft an inmate exemption on the ten-day receipt requirement in the mailbox rule." *Id*. at 6.

Because Texas Supreme Court and intermediate appellate court decisions[1] have held that depositing a notice of appeal in a civil case in the outgoing prison mailbox and an inmate's delivery

---

[1] *See*, *e.g.*, *Ramos v. Richardson*, 228 S.W.3d 671 (Tex. 2007); *Warner v. Glass*, 135 S.W.3d 681 (Tex. 2004); and *Villarreal v. State*, 199 S.W.3d 30 (Tex. App. – San Antonio 2006, no pet.).

of a notice of appeal from his conviction to jail officials is a "mailing," the state correctly assumes that appellant timely mailed his new trial motion within thirty days of the imposition of sentence. *Id*. at 9. As a corollary, the state also assumes that, had the clerk received the motion by December 29, it would have been timely, and that appellant's February 12, 2009 notice of appeal, had it been received within ten days after the due date, would have been timely and would have been perfected appeal. *Id*. However, the state maintains that appeal was not perfected because the clerk did not receive the new trial motion or the notice of appeal within the ten-day grace period. *Id*. It contends that strict application of the filing deadlines, including the ten-day receipt requirement, will preserve the orderly administration of justice and suggests that appellant's remedy is to seek an out-of-time appeal through habeas corpus. The state also suggests that carving out an exemption from the ten-day receipt requirement, as appellant proposes, would confound application of the procedural rules such that an appeal could be perfected, no matter when a new trial motion or notice of appeal is received; all that would be required is the inmate's certification that he delivered the pleading for mailing by the due date, thus creating a potential for fraud, while exposing such fraud through prison mail records would be cumbersome. *Id*. at 10.

The court of appeals acknowledged the mailbox rule and that appellant's certificate of mailing indicated that "he gave the motion for new trial motion to prison authorities on December 18, 2008, thereby meeting the first portion of the mailbox rule." *Campbell v. State*, *supra* at **2-3. However, because the record did not reveal anything indicating that the motion was received by the clerk within ten days of December 18, as required by Rule 5, the court of appeals held that the mailbox rule was unavailing to appellant. *Id*.

**Analysis**

The "prisoner mailbox rule" provides that a *pro se* prisoner is deemed to have filed his properly addressed notice of appeal at the time it is delivered to the appropriate prison authorities for forwarding to the clerk of the convicting court. Barbara J. Van Arsdale, J.D., *Application of "Prisoner Mailbox Rule" by State Courts under State Statutory and Common Law*, 29 A.L.R.6th 237 (2007). In Texas, the mailbox rule is encompassed by TEX. R. APP. P. 9.2(b) and TEX. R. CIV. P. 5. Rule 9.2(b) provides that, if filed by mail, a document received within ten days after the filing deadline is considered timely filed if: 1) it was sent to the proper clerk by United States Postal Service first-class, express, registered, or certified mail; 2) it was placed in an envelope or wrapper properly addressed and stamped; and 3) it was deposited in the mail on or before the last day for filing. Rule 5 also provides that additional time to file is permitted, including specific provisions that if any properly addressed and stamped document in an envelope or wrapper sent to the proper clerk by first-class United States mail and deposited in the mail on or before the last day for filing, and received by the clerk not more than ten days after the last day for filing, shall be filed by the clerk and be deemed filed in time.

*Houston v. Lack*, 487 U.S. 266 (1988), involved a prisoner who had filed a *pro se* petition seeking a writ of habeas corpus in federal district court. After the district court entered judgment dismissing the habeas petition, Houston, still acting *pro se*, deposited his notice of appeal with the prison authorities for mailing to the district court twenty-seven days after the judgment, three days before the thirty-day deadline for filing such notice. Although the record did not contain direct evidence of the date on which the district court received the notice, that notice was stamped "filed" on the thirty-first day after the district court's judgment was entered, i.e., one day after the expiration of the thirty-day filing period for taking an appeal pursuant to the Federal Rules of Appellate

Procedure. *Houston v. Lack*, 487 U.S. at 268-69. The Supreme Court determined that Houston "filed his notice within the requisite 30-day period when, three days before the deadline, he delivered the notice to prison authorities for forwarding to the District Court." *Id*. at 270. It pointed out the uniqueness of the situation of *pro se* prisoners seeking to appeal without the aid of counsel, as such prisoners "cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline." *Id*. at 270-71. The Supreme Court further noted that "*pro se* prisoners have no control over delays between the prison authorities' receipt of the notice and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Id*. at 273-74. It added that "the moment at which *pro se* prisoners necessarily lose control over and contact with their notices of appeal is at delivery to prison authorities, not receipt by the clerk[, ... and] a *pro se* prisoner has no choice but to hand his notice over to prison authorities for forwarding to the court clerk." *Id*. at 275. As for concerns about increasing disputes and uncertainty over when a filing occurred, the Court recognized that "[t]he *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox–he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date." *Id*. "Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one." *Id*. The Court concluded that the court of appeals had jurisdiction over Houston's appeal "because the notice of appeal was filed at the time [he] delivered it to prison authorities for forwarding to the court clerk." *Id*. at 276.

The Supreme Court also pointed out that, "[u]nlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped 'filed' or to establish the date on which the court received the notice." *Houston v. Lack*, 487 U.S. at 271. The Court also noted that *pro se* prisoners are forced to entrust their appeals to the vagaries of the mail, while other litigants who use that method can "place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the day the court received it." *Id*. It also notes that "[p]ro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them."

The Supreme Court recognizes that "[w]orse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay." *Id*. "No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped 'filed' on time." *Id*. (Emphasis in original.) "And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received." *Id*. It also recognizes that "[u]nskilled in law, unaided by counsel, and unable to leave the prison, [the *pro se* prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access – the prison authorities

– and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice." *Id.* at 271-72.

The Texas Supreme Court has declined to penalize a *pro se* inmate litigant who timely delivered a document to the prison mailbox and has held that an inmate's petition be deemed filed when placed with prison officials for mailing, *i.e.* when prison authorities receive the document to be mailed. *Ramos v. Richardson*, 228 S.W.3d 671, 673 (Tex. 2007); *Warner v. Glass*, 135 S.W.3d 681, 684-85 (Tex. 2004). Like the United States Supreme Court, the Texas Supreme Court recognized the unique circumstances of *pro se* inmate litigants. We also recognize those circumstances.

Like our sister courts, we decline to penalize a *pro se* inmate who timely delivers a document to the prison mailbox. We find the analysis of the United States Supreme Court in *Houston v. Lack* to be compelling. We see no reason for this Court to hold contrarily to both the United States and Texas Supreme Courts. Therefore, we shall apply those considerations to an analogous situation, such as the present case.

We hold that the pleadings of *pro se* inmates shall be deemed filed at the time they are delivered to prison authorities for forwarding to the court clerk. Accordingly, we reverse the judgment of the court of appeals and remand this cause to that court for further proceedings consistent with this opinion.

Delivered: September 22, 2010
Publish